UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HIGHTOWER, IV,

           Plaintiff,        Civil Action No. 19-13433
                                        Honorable Denise Page Hood
v.                                    Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 11)

Plaintiff Charles Hightower, IV ("Hightower") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 10, 11), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Hightower is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, Hightower's Motion for Summary Judgment **(ECF No. 10)** be **GRANTED IN PART** to the extent it seeks remand

and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

II.  **REPORT**

   A.  **Background**

Hightower was 17 years old at the time of his application date of November 30, 2016, but by the time of the administrative hearing, he was 19. (Tr. 44, 117). At that time, he was attending tenth grade classes online and receiving special education services. (Tr. 45, 47, 143-44). Previously, when he attended in-person high school classes, he was involved in verbal and physical altercations, which led to his removal from that setting. (Tr. 144). He worked briefly at McDonald's, on a part-time basis, but the job ended because he wasn't "catching on" quickly enough and then got into an altercation with a customer and the manager. (Tr. 49-50, 144). He alleges disability primarily as a result of a learning disability and behavioral/emotional issues (including bipolar disorder). (Tr. 45, 135).

After Hightower's application for SSI was denied at the initial level on April 21, 2017 (Tr. 73-76), he timely requested an administrative hearing, which was held on July 25, 2018, before ALJ Donald D'Amato (Tr. 40-55). Hightower, who was not represented by an attorney, testified at the hearing, as did his mother, Crystal Jackson, and vocational expert ("VE") Annette Holder. (*Id.*). On November 2, 2018, the ALJ issued a written decision finding that Hightower was not disabled under the Act prior to age 18 or thereafter. (Tr. 19-36). On October 23, 2019, the Appeals Council denied review. (Tr. 1-5).

Hightower timely filed for judicial review of the final decision on November 20, 2019. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Hightower's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.  The ALJ's Application of the Disability Framework Analysis

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis[1]:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or

---

[1] Because Hightower applied for SSI when he was 17 years old, but became an adult while his application was pending, the ALJ was required to evaluate his SSI claim under both the child and adult disability standards. *See* 42 U.S.C. §§ 1382c(a)(3)(A), (C); 20 C.F.R. § 416.924(f). Because the Court finds error in the ALJ's application of the adult disability standards, and is recommending remand on those grounds, it will confine its discussion to the five-step sequential analysis applicable to adult disability claims.

3

> mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Hightower has not been disabled under the Act since attaining age 18. At Step One, the ALJ found that Hightower has not engaged in substantial gainful activity since the application date. (Tr. 24). At Step Two, the ALJ found that he has the severe impairments of attention deficit hyperactivity disorder ("ADHD") with borderline intellectual functioning; bipolar disorder, low average to borderline intellectual functioning; generalized anxiety disorder; and major depressive disorder. (Tr. 24, 32). At Step Three, the ALJ found that

Hightower's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 32).

The ALJ then assessed Hightower's residual functional capacity ("RFC"), concluding that, since attaining age 18, he has been capable of performing a full range of work at all exertional levels, but with the following nonexertional limitations: requires work that is unskilled, with one-, two-, or three-step instructions, learned by demonstration, and is non-fast-rate production (defined as involving no hourly quotas and no conveyor belt or assembly line work); cannot function as a member of a discrete team, and contact with coworkers and supervisors must be largely superficial; cannot have direct interactive contact with the public; requires a "low-stress" environment (defined as one having only occasional changes in work setting); and requires work that, in addition to any regularly scheduled breaks, allows him to be off task for up to 10% of an eight-hour workday, due to the symptoms from his impairments. (Tr. 34).

At Step Four, the ALJ found that Hightower has no past relevant work. (*Id.*). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that, since attaining age 18, Hightower has been capable of performing the jobs of bench assembler (125,000 jobs nationally), packer (75,000 jobs), and sorter (80,000 jobs). (Tr. 35). As a result, the ALJ concluded that, since attaining age 18, Hightower has not been disabled under the Act. (*Id.*).

C.   **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute

is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial

6

evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

**D.     Analysis**

In his motion for summary judgment, Hightower argues that the ALJ erred when he "relied on only a state-agency DDS assessment of Hightower's evidence according to the childhood functional equivalence 'domains' standards – and not an opinion as to residual functional capacity according to the adult standards." (ECF No. 10, PageID.293). In essence, then, Hightower argues that the ALJ evaluated his claim "with a glaringly incomplete record – arriving at an RFC finding lacking support in the evidence."[2] (*Id.*). For the reasons set forth below, the Court agrees and finds that remand is required.

As set forth above, the ALJ determined that Hightower has the RFC to perform a

---

[2] Hightower also argues that the ALJ erred in failing to consider his inability to read or write above the fifth-grade level when considering his disability claim under both the child and adult standards, and in failing to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles. (ECF No. 10, PageID.304-06). Because the Court is recommending remand on other grounds, it need not address the merits of these arguments. On remand, however, the ALJ should thoroughly evaluate Hightower's SSI claim under the child and adult standards, including, in particular, specifically weighing his *actual* performance in school over many years and in unsuccessfully attempting to work against the factors highlighted by the ALJ for concluding Hightower had less than marked limitations in the functional domains that most correspond to those issues: acquiring and using information; attending and completing tasks; and interacting and relating with others. For example, as to acquiring and using information, the ALJ wrote that "teacher statements indicate that absences and incomplete work, rather than cognitive or mental impairment, may be preventing [Hightower] from progressing through high school at the normal rate." (Tr. 29). Yet, in the very next sentence, the ALJ recognized that Hightower "receives special education services *due to emotional impairment . . .*" (*Id.*) (emphasis added). Hightower's special education teacher also specifically noted his need for "clear structure and one-on-one or small group help," and a need to have "directions repeated." (Tr. 25). And, Hightower had numerous "borderline" test scores and academic test scores many grade levels below his age. (Tr. 25, 27). While the Court cannot say that this evidence compels a particular finding as to Hightower's limitations in acquiring and using information as a child, the ALJ's decision on remand would benefit from a specific explanation as to how these historical facts impacted that decision.

full range of work at all exertional levels, but with the following nonexertional limitations: requires work that is unskilled, with one-, two-, or three-step instructions, learned by demonstration, and is non-fast-rate production (defined as involving no hourly quotas and no conveyor belt or assembly line work); cannot function as a member of a discrete team, and contact with coworkers and supervisors must be largely superficial; cannot have direct interactive contact with the public; requires a "low-stress" environment (defined as one having only occasional changes in work setting); and requires work that, in addition to any regularly scheduled breaks, allows him to be off task for up to 10% of an eight-hour workday, due to the symptoms from his impairments. (Tr. 34).

In formulating Hightower's RFC, the ALJ referenced school records, noting that his "academic difficulties may be due in large part to absences and not completing work." (*Id.*). He acknowledged that Hightower has been diagnosed with borderline intellectual functioning[3] and suffers from various emotional impairments, including generalized anxiety disorder, bipolar disorder, oppositional defiant disorder, ADHD, and social anxiety disorder. (Tr. 34, 186, 204-06). The ALJ then noted – somewhat inconsistently – that Hightower's "special education services are quite limited, and are due to emotional impairment, not any academic or learning issue." (Tr. 34). Finally, the ALJ indicated –

---

[3] In April 2017, Hightower underwent a mental consultative examination with Suzann Kenna, MA, LLP (whose report was reviewed and signed by licensed psychologist Terrance Mills, Ph.D.). (Tr. 215-19). Ms. Kenna administered the WAIS-IV, which showed borderline intellectual functioning in all areas except verbal comprehension (which was low average). (Tr. 217). She noted that testing indicated that Hightower has "poor mental control" in several areas; depressive as well as manic episodes; and is "not able to do work related activity because of his mental problems." (Tr. 219). The ALJ did not explicitly discuss this opinion in formulating Hightower's RFC.

8

without citation to the record – that most of Hightower's medical records "note that he was not taking any medication" but that there was evidence of improvements in "attention and interactions with others … during two of the few instances when he was taking medication." (*Id.*). As a result, the ALJ concluded that Hightower "is able to work within the limitations of the residual functional capacity." (*Id.*). This is the entirety of the ALJ's RFC analysis.

In his motion for summary judgment, Hightower acknowledges that the record contains the April 2017 opinion of a state agency reviewing psychologist, S. Hill, Ph.D., who applied the "childhood disability evaluation" standards and opined that Hightower was not disabled prior to attaining age 18 because he did not have "marked" or "extreme" limitations in any of the six functional domains set forth in 20 C.F.R. § 416.926a. (ECF No. 10, PageID.299) (citing Tr. 66-67). Hightower argues, however, that by the time of the administrative hearing, despite the fact that he was 19 years old, no state agency psychologist's opinion had been obtained as to his RFC.[4] (*Id.*). Thus, where there is no medical opinion or expert testimony underpinning the ALJ's RFC finding, and where the ALJ's discussion does not make sufficiently clear how certain aspects of the RFC were determined, Hightower argues that it is not supported by substantial evidence.[5]

---

[4] Indeed, by then, a Social Security employee had added a warning to the record that Hightower became an adult while the claim was pending, and it would be necessary to consider his claim under the adult disability standards. (Tr. 158).

[5] The Court disagrees with the Commissioner's argument that Hightower is "push[ing] for a categorical rule that [the] record must contain a medical expert opinion to support the RFC assessment[.]" (ECF No. 11, PageID.325). And, indeed, courts have held the opposite, recognizing that the final RFC assessment is the responsibility of the ALJ. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that

A claimant's RFC is the most that he or she can do despite his or her impairments. *See* 20 C.F.R. § 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from – though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence of record. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-28 (6th Cir. 2013).

But, courts have recognized that "ALJs are lay persons, not experts capable of meaningfully sifting through [a] shapeless mass of medical data." *Charbonneau v. Comm'r of Soc. Sec.*, No. 18-10112, 2019 WL 960192, at *16 (E.D. Mich. Jan. 11, 2019). Thus, while there is no bright line rule in this district that ALJs must employ a supporting medical opinion when constructing the RFC, *see supra* at 9, n. 5, the RFC finding must be "'supported by substantial evidence and not merely the ALJ's own medical interpretation of the record.'" *Id.* (quoting *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017)). "Under this approach, the court must also examine whether the medical evidence of impairment was simple enough that the ALJ could come to a 'commonsense judgment' about the RFC." *Id.* (quoting *Gross*, 247 F. Supp. 3d at 830). And, the ALJ's

---

medical opinions must be the building blocks of the residual functional capacity finding …."); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

written decision must make sufficiently clear how he translated the record evidence into the ultimate RFC. *See Gross*, 247 F. Supp. 3d at 829.

Thus, the principal question here, where there is *no* medical opinion underpinning the ALJ's RFC assessment, is whether the ALJ provided a reasoned basis – beyond his own lay interpretation of the raw medical data – for reaching his ultimate RFC determination. *See McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *8 (E.D. Mich. Sept. 21, 2017) (finding that "a record without any opinion evidence at all forces the ALJ into the untenable position of playing doctor[,]" whereas a record that contains some medical opinion – even if not adopted – provides "some medical opinion evidence from which the ALJ may extrapolate to form her own RFC without interpreting raw medical data"). "[I]n order to make a decision on this issue, this Court may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an adequate and logical bridge between the evidence and the result." *Gross*, 247 F. Supp. 3d at 829 (internal quotations omitted).

In this case, as set forth above, there is significant evidence in the record that at least appears to be inconsistent with the ALJ's RFC finding. For example, Dr. Hill noted that, at age 17, Hightower was not even capable of writing at the fourth grade level. (Tr. 64). Hightower worked briefly at McDonald's – on a part-time basis – but was fired, in part, because he wasn't "catching on." (*Id.*). His full scale IQ of 76 puts him in the borderline range of intellectual functioning, and he has no friends because he frequently gets into fights with others. (Tr. 65). The teacher questionnaire contained in the record reflects that Hightower was then attending an "online" special education high school, after failing

11

nearly every class in his earlier special education setting (0.6 and 0.0 GPAs previously). (Tr. 25-26, 191-99). Hightower testified that his medications made him feel sleepy and "weird," and that he's unable to stay focused. (Tr. 47-48.)

Here, as in *McCaig*, the ALJ discussed some of this evidence (Tr. 26-28), but there is no indication in the decision as to *how* he translated Hightower's problems with reading, writing, math, concentration, and social interaction into an adult RFC, or what portions of the record suggest that the limitations found by the ALJ – and not others – are warranted. This is problematic because, in light of the evidence in this case, and in the absence of a functional capacity medical opinion, there is no way for the Court to determine whether the ALJ's RFC finding is supported by substantial evidence.[6] *See McCaig*, 2017 WL 4211047, at *9 (remand warranted where the ALJ did "a thorough job of recounting much of the medical evidence accumulated over the course of [her] treatment, [but] in several instances, it is unclear how [the] RFC conclusions correlate to the medical findings").

Taken as a whole, then, it simply cannot be said that the evidence pertaining to Hightower's mental impairments was so simple that the ALJ could render a "commonsense judgment" about easily understood medical findings as they relate to his functional

---

[6] Indeed, as Hightower points out, "[t]he ALJ did not explain the odd inconsistency limiting a worker to 'largely superficial' contact with coworkers and supervisors while requiring the same worker to succeed in a new job 'learned by demonstration.' The detail of the ALJ's RFC finding – that conveyor belts would be a problem, or that Hightower's lack of focus amounts to 10% of a workday – is completely unsupported by evidence." (ECF No. 10, PageID.302) (internal citations omitted). Similarly, it is unclear how the ALJ reconciled this aspect of the RFC with the record evidence of Hightower's multiple failed attempts to maintain work and his need for supervision while on the job. (Tr. 25 (referencing Hightower's mother's testimony as to these issues, finding her testimony "consistent with the record as a whole," and giving it "some weight"), 49-50).

12

capabilities. *See Charbonneau*, 2019 WL 960192, at *16. Rather, this is a case where the record contains no medical opinion regarding Hightower's specific functional limitations – as they would affect his adult RFC – and the ALJ took it upon himself to translate raw medical data into such limitations, rather than entrusting that responsibility to a medical professional. This is impermissible given the evidence in this case, and remand is required. *See Keener v. Comm'r of Soc. Sec.*, No. 18-CV-00913-MJR, 2020 WL 755377, at *6 (W.D.N.Y. Feb. 7, 2020) (an ALJ is permitted to make a commonsense judgment as to a claimant's functional capacity only when there are "minor physical impairments, or when the record is clear and there is a useful assessment of [the] plaintiff's limitations"); *VanWormer v. Comm'r of Soc. Sec.*, No. 16-12978, 2017 WL 4230654, at *3 (E.D. Mich. Sept. 25, 2017) (remand required where the ALJ "improperly made a finding as to Plaintiff's functional capacity based on an independent review of Plaintiff's raw medical data without an opinion from a treating or examining source, which is inconsistent with the practice of this Circuit").

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 11)** be **DENIED**, Hightower's Motion for Summary Judgment **(ECF No. 10)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

Dated: November 20, 2020　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. L.R. 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 20, 2020.

                                            s/Eddrey O. Butts
                                            EDDREY O. BUTTS
                                            Case Manager